Filed 8/30/24  In re M.H. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.H., a Person Coming Under the Juvenile Court Law. | B333184 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22CCJP04036A) |

APPEAL from orders of the Superior Court of Los Angeles County.  Kristen Byrdsong, Commissioner.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David M. Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

J.S., the paternal grandmother of minor M.H., purports to appeal from the orders denying her petition under Welfare and Institutions Code[1] section 388, and terminating parental rights over M.H. under section 366.26. J.S. contends the juvenile court erred in issuing these orders because it failed to ensure that she would have continued visitation with M.H. after the child was adopted. We conclude J.S.'s claims fail because the record shows that the court previously ordered unmonitored visitation between J.S. and M.H., and that such order remained in effect following the termination of parental rights. The court did not abuse its discretion in denying J.S.'s section 388 petition for increased visitation, or in failing to order postadoption visitation at the section 366.26 hearing. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Section 300 petition

W.Z. (Father) and A.H. (Mother) are the parents of M.H., a boy born in October 2022. Father is deceased, and has no other children. Mother has five older children, four of whom were prior dependents of the juvenile court. This matter came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) when both Mother and M.H. tested positive for amphetamine at the child's birth. Following the birth, DCFS detained M.H. from Mother, and placed the child with the maternal grandparents, T.V. and R.V. The maternal grandparents also have custody of Mother's five older children through legal guardianship or adoption.

---

[1]    Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

2

On February 1, 2023, the juvenile court sustained a section 300 petition for M.H. based on Mother's substance abuse, mental and emotional problems, and history of domestic violence with a male companion. The court removed M.H. from Mother's custody, and bypassed reunification services for her. DCFS began assessing adoption by the maternal grandparents as M.H.'s permanent plan.

## II. J.S.'s visitation with M.H.

On February 1, 2023, the same date that it sustained the section 300 petition, the juvenile court also ordered visitation between M.H. and his paternal grandmother, J.S. The record does not disclose the specific terms of the visitation order other than that J.S.'s visits would be unmonitored, the exchange would occur at a halfway point, and DCFS had the discretion to liberalize the visits.

The following day, DCFS provided J.S. with a visitation schedule. Under the initial schedule, J.S. would have unmonitored visits with M.H. every other Sunday starting on February 5, 2023. On February 14, 2023, DCFS decided to gradually liberalize J.S.'s visitation, first to weekly Sunday visits, then to overnight weekend visits, and finally to alternating week-long visits. Under the amended schedule, M.H. would spend alternating weeks with his maternal and paternal grandparents starting on March 5, 2023. DCFS noted that the purpose of this change was not to assess J.S. for placement since M.H. was suitably placed with his maternal grandparents, but to allow the paternal family an opportunity to bond with the child. Following the change, DCFS visited J.S.'s home on two occasions, and observed that J.S. was loving and appropriate with M.H.

As of May 2023, M.H. continued to do well in the maternal grandparents' care, and was closely bonded to them. M.H. was receiving Regional Center services, and his caregivers were attentive to all of his needs. While the maternal grandparents were committed to adopting the child and providing him with a permanent home, J.S. also desired to become M.H.'s prospective adoptive parent and maintain a relationship with him. Both J.S. and the maternal grandparents filed requests to be declared M.H.'s de facto parents.

On May 31, 2023, while the two requests for de facto parent status were pending, DCFS reduced J.S.'s visitation with M.H. to overnight weekend visits twice per month. DCFS explained that alternating weeks between J.S. and the maternal grandparents was not a sustainable visitation plan given M.H.'s need for stability and permanency. DCFS determined that reverting to overnight weekend visits would allow J.S. to maintain a bond with M.H. while providing more stability for the child in his current placement. When DCFS advised J.S. of the amended schedule, she expressed her belief that the maternal grandmother, T.V., orchestrated the change. DCFS assured J.S. that this was not the case, and that the plan was always to revert to overnight weekend visits once she and M.H. were able to form a familial relationship. The schedule change took effect on June 9, 2023.

In its July 2023 status review report, DCFS recommended a permanent plan of adoption by M.H.'s maternal grandparents. According to the report, M.H. continued to thrive in the home of his maternal grandparents, and they consistently showed themselves to be loving caregivers who treated M.H. as their own son. In addition, the child had a strong bond with his five half-

4

siblings who resided in the same home. During their time together, J.S. also demonstrated love, affection, and appropriate care for M.H. DCFS did not, however, support any change in placement given that M.H. had been in his maternal grandparents' care since his birth. DCFS instead referred the parties to mediation to establish a postadoption contact agreement.

On July 10, 2023, the juvenile court held a hearing on the two requests for de facto parent status. After hearing testimony from both T.V. and J.S., the court granted the maternal grandparents' request and denied J.S.'s request. The court found that M.H. had substantial ties to the maternal grandparents and his half-siblings, and that it would be detrimental to sever those ties. The court noted that the maternal grandparents had been caring for M.H. since his birth, were well-adapted to meeting his special needs, and were in the process of qualifying as his prospective adoptive parents. The court also expressed that it was in M.H.'s best interest to have a relationship with both sets of grandparents, and encouraged them to follow through with mediation to achieve that result.

In a last minute information report filed in late July 2023, DCFS stated it was concerned about recent comments that J.S. made regarding adoption by the maternal grandparents. According to the report, J.S. repeatedly asked the social worker what it would take to stop the adoption and prevent the termination of parental rights. J.S. also said she wanted to show M.H. photos of Father so that he would know who his "real father" was. DCFS further reported that T.V. shared a concern about J.S.'s attendance at M.H.'s medical appointments. Because doctors' offices only allowed two adults to be present in the exam

room, the maternal grandfather, R.V., could not attend M.H.'s appointments when J.S. was there.  DCFS recommended that both T.V. and R.V. be present at the appointments as M.H.'s caregivers, and then relay any pertinent information to J.S.

At a review hearing held on August 7, 2023, the juvenile court ordered that J.S. was no longer allowed to attend M.H.'s medical appointments so that his current caretakers could be present.  Given J.S.'s comments about adoption, the court also advised counsel to walk the matter on calendar if any issues with J.S.'s visitation arose.

In September 2023, T.V. raised additional concerns about J.S.'s contact with M.H.  T.V. informed DCFS that J.S. continued to show up for M.H.'s medical appointments even when she could not enter the building.  J.S. also sent excessive text messages addressed to M.H., who was preverbal.  The maternal grandparents reported the current visitation schedule was providing M.H. with more structure and stability, but they wanted discretion over J.S.'s visits as they continued to build a relationship with M.H.'s paternal family.

## III.  J.S.'s section 388 petition

On September 19, 2023, J.S. filed a section 388 petition to modify the orders made on July 10 and August 7, 2023.  In her petition, J.S. stated that she believed she was misrepresented at the July 10 hearing in her goal to adopt M.H., and that she was told after the August 7 hearing that she could no longer attend M.H.'s medical appointments.  J.S. also stated that DCFS decreased her visitation with M.H. from alternating weeks to two overnight weekends per month despite the lack of any issue with the prior schedule.

6

The relief sought included (1) a legal guardianship over M.H. with the option to adopt, (2) a coguardianship with the maternal grandparents, and (3) the resumption of a consistent visitation schedule and participation in M.H.'s appointments. In support of the petition, J.S. stated: "[M.H.] will be provided a loving, nutritional caring safe home and environment. [M.H.] will receive undivided individual full attention to enhance his cognitive and emotional and mental growth. Additionally, he will have a growing relationship with his paternal family members, aunts, uncles, cousins and grandparents." The record does not show whether J.S. or her attorney served a copy of the petition on all parties.

On September 21, 2023, the juvenile court summarily denied J.S.'s section 388 petition. In its order, the court found that J.S.'s request did not state new evidence or a change of circumstances, and that it constituted an improper ex parte communication.

## IV.    Section 366.26 hearing

On September 26, 2023, the juvenile court held the section 366.26 hearing for M.H. J.S. did not attend the hearing. Mother submitted on DCFS's request that the court terminate parental rights over M.H. and free him for adoption by the maternal grandparents. Counsel for M.H. also joined in DCFS's request, noting that the maternal grandparents had been caring for the child since his birth, and were committed to providing him a loving, secure, and stable home. The court terminated parental rights over M.H., ordered adoption as the permanent plan, and designated the maternal grandparents as the prospective adoptive parents. In its minute order for the section 366.26

hearing, the court stated that "[a]ll prior orders not in conflict shall remain in full force and effect."

On November 8, 2023, J.S. filed an appeal.

## DISCUSSION

### I. Scope of appellate review

We first address the proper scope of this appeal. In her November 8, 2023 notice of appeal, J.S. stated that she was appealing (1) the July 10, 2023 "denial [of] de facto parent/legal guardian/misrepresentation," (2) the August 7, 2023 order that she was "no longer allowed to attend doctor appointments," and (3) the September 26, 2023 order for "decreased contact without reasonable reason."

The timely filing of a notice of appeal is a prerequisite to appellate jurisdiction. (*In re A.R.* (2021) 11 Cal.5th 234, 246.) To be timely, the notice of appeal ordinarily must be filed within 60 days of the appealable judgment or order. (Cal. Rules of Court, rule 8.406(a)(1).) Additionally, " ' "[a]ppellate briefs must provide argument and legal authority for the positions taken." [Citation.] "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 79.) Here, J.S. failed to file a timely notice of appeal from either the July 10, 2023 order denying her request for de facto parent status, or the August 7, 2023 order prohibiting her from attending M.H.'s medical appointments. She also failed to raise any argument regarding these orders in her appellate briefing. J.S. thus is precluded from challenging them in this appeal.

J.S. did file a timely notice of appeal from the September 26, 2023 order terminating parental rights. In her appellate

8

briefing, she also seeks to challenge the September 21, 2023 order denying her section 388 petition regarding visitation. J.S. claims the juvenile court erred in issuing both orders because it failed to ensure that she would have continued contact with M.H. once the child was adopted by the maternal grandparents. As a general rule, " 'notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' " (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.) Although J.S.'s notice of appeal does not specifically reference the September 21, 2023 order denying her section 388 petition, it does state that she is appealing the order for "decreased contact" with M.H. Because the section 388 petition sought relief from DCFS's decision to decrease J.S.'s visitation to overnight weekend visits, we liberally construe the notice of appeal as challenging both the order terminating parental rights and the portion of the order denying J.S.'s section 388 petition regarding visitation.

## II. The juvenile court did not err in denying J.S.'s section 388 request for increased visitation

J.S. argues the juvenile court abused its discretion when it denied her section 388 petition without ordering a hearing on the issue of visitation. In her petition, J.S. asked the court to order a return to alternating weeklong visits with M.H. rather than the current schedule of overnight weekend visits twice per month. We see no abuse of discretion in the denial of the petition.

Section 388 permits the juvenile court, "upon grounds of change of circumstance or new evidence, . . . to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) The statute allows the modification of a prior order

9

only when a parent or other person with an interest in a dependent child establishes that (1) changed circumstances or new evidence exists; and (2) the proposed modification would promote the best interest of the child.  (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1080.)  "The change of circumstances or new evidence 'must be of such significant nature that it requires . . . modification of the challenged prior order.' " (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).)  "In assessing the best interests of the child, 'a primary consideration . . . is the goal of assuring stability and continuity.' " (*Id.* at p. 616.)  The petitioner "must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition." (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.)  We review the summary denial of a section 388 petition for abuse of discretion.  (*Ibid.*)

In this case, the juvenile court acted within its discretion when it summarily denied J.S.'s section 388 request for a change in visitation.  The court originally ordered unmonitored visits between J.S. and M.H. on February 1, 2023.  The record does not include a copy of the visitation order or a complete description of its terms.  The record does reflect that DCFS had discretion to liberalize the visits, and that it began doing so in mid-February 2023, increasing J.S.'s time with M.H. from weekly day visits to overnight weekend visits to alternating week-long visits.  Starting in March 2023, M.H. spent the entirety of every other week with J.S. and the paternal family.  DCFS explained, however, that the purpose of this increase in visitation was not to evaluate J.S. for M.H.'s placement, but rather to permit the paternal family an opportunity to form a bond with the young child.  The record further shows that, in June 2023, DCFS

10

changed the visitation schedule back to overnight weekends twice per month. Because J.S. was able to form a bond with M.H. during their additional time together, DCFS decided that reverting to overnight weekend visits would allow J.S. to maintain that bond while best serving the child's need for stability in his prospective adoptive home.

When J.S. filed her section 388 petition in September 2023, she sought a return to the prior visitation schedule of alternating weeks between the maternal and paternal families. J.S. asserted that the requested change would provide M.H. with "a loving, nutritional caring safe home and environment," and would allow him to receive "undivided individual full attention to enhance his cognitive and emotional and mental growth." The evidence demonstrated, however, that the maternal grandparents had been providing M.H. with a safe and loving home since his birth, and that they were well-adapted at caring for the child's special needs. Furthermore, M.H. was thriving in his maternal grandparents' care, and he was closely bonded with both his caregivers and his maternal half-siblings. Although it is undisputed that J.S. also was loving and attentive toward M.H., DCFS reasonably determined that a 50/50 split in custodial time between the maternal and paternal grandparents was not a feasible long-term plan given the child's need for stability and permanency. After DCFS reduced J.S.'s visits to two overnight weekends per month, the maternal grandparents reported that the amended schedule was providing M.H. with more structure and stability in his prospective adoptive home.

On this record, the juvenile court reasonably could conclude that J.S. failed to make a prima facie showing that there were changed circumstances, or that an order for increased visitation

11

was in M.H.'s best interest.  The juvenile court accordingly did not abuse its discretion in denying the section 388 petition.

**III.    The juvenile court did not err in failing to order postadoption visitation at the section 366.26 hearing**

J.S. also contends the juvenile court abused its discretion when it terminated parental rights without issuing an order for postadoption visitation between J.S. and M.H.  J.S. claims that, by failing to order postadoption visitation at the section 366.26 hearing, the juvenile court effectively terminated her visitation with M.H.  We conclude J.S.'s claim lacks merit.

"Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory."  (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219.)  In dependency proceedings, section 361.2, subdivision (i), governs a grandparent's right to visitation with a child that is removed from parental custody.  (*In re J.T.* (2014) 228 Cal.App.4th 953, 962.)  It provides that "[i]f the court has ordered removal of the child from the physical custody of the child's parents . . ., the court shall consider whether the family ties and best interest of the child will be served by granting visitation rights to the child's grandparents."  (§ 361.2, subd. (i).)  Additionally, section 362.4 authorizes the juvenile court to order visitation between a child and a grandparent when terminating dependency jurisdiction.  (*In re J.T.*, at p. 962.)  Under that statute, "[i]f the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . , the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."  (§ 362.4, subd. (a).)  We generally review the juvenile court's visitation order for abuse of discretion.  (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119.)

12

Citing *Mickel O.*, *supra*, 197 Cal.App.4th 586, J.S. argues the juvenile court abused its discretion at the section 366.26 hearing by effectively terminating her visitation with M.H. when it terminated parental rights. In that case, the juvenile court terminated parental rights over two children with adoption by the paternal grandparents as the permanent plan. (*Id.* at pp. 610–612.) At the same time, the court summarily terminated the maternal grandparents' supervised visitation, explaining that the children would " 'probably end up being adopted by [paternal grandparents],' " who would decide whether to allow visits. (*Id.* at p. 612.) In reversing the order terminating the visitation, the Court of Appeal reasoned there was "nothing in the record indicating that supervised visitation should cease because of the possible adoption in the future." (*Id.* at p. 618.) The court also noted the maternal grandparents were "blindsided by this last-minute decision and the summary manner in which all contact with [the children] was abruptly terminated." (*Ibid.*)

J.S. contends that, as in *Mickel O.*, she "was 'blindsided' by the sudden termination of her visitation." But contrary to this claim, there is no indication in the record that the juvenile court terminated J.S.'s visitation with M.H. when it terminated parental rights. As discussed, the court granted J.S. unmonitored visitation with M.H. in February 2023. DCFS gradually liberalized J.S.'s visitation to alternating week-long visits before reverting to overnight weekend visits starting in June 2023. This visitation schedule was still in effect as of September 2023, when the court held the section 366.26 hearing. At that time, the court terminated parental rights over M.H. and ordered adoption as the child's permanent plan. The court did not, however, terminate J.S.'s visits with M.H. or otherwise

13

modify its prior visitation order.  In fact, neither the court nor the parties addressed the issue of visitation at all.  Instead, the court stated in its minute order for the hearing that "[a]ll prior orders not in conflict shall remain in full force and effect."  Therefore, at the conclusion of the section 366.26 hearing, the prior order for visitation remained in effect notwithstanding the termination of parental rights.

J.S. asserts that, given the strained relationship between the maternal and paternal grandparents, the juvenile court abused its discretion by failing to make a postadoption visitation order when it terminated parental rights.  In support of this argument, J.S. cites to cases holding that the juvenile court has authority under section 362.4 to order visitation between a child and a nonparent when terminating dependency jurisdiction.  (*In re J.T.*, *supra*, 228 Cal.App.4th at p. 960; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518; *In re Robin N.* (1992) 7 Cal.App.4th 1140, 1146.)  However, section 362.4 has no application at this stage of the dependency proceedings because the juvenile court did not terminate its jurisdiction over M.H. when it terminated parental rights.  Rather, consistent with section 366.26, the court transferred care and custody of the child to DCFS for adoptive planning and placement.  Because the court continued to exercise jurisdiction over M.H. at the conclusion of the section 366.26 hearing, its existing visitation order remained in effect.

J.S. claims a postadoption visitation order was necessary in this case because the maternal grandparents have not allowed her to have any visits with M.H. since the section 366.26 hearing.  However, the record before us in this appeal is limited to matters that occurred prior to the challenged order terminating parental rights.  As of the September 2023 section 366.26 hearing, J.S.

14

was having overnight weekend visits twice per month, and there is nothing in the record that suggests the maternal grandparents refused to comply with that schedule.  J.S. did not attend the section 366.26 hearing, and none of the parties that did attend asked the court to consider a postadoption visitation order at that time.  To the extent J.S. seeks to present new evidence regarding events that have occurred since the section 366.26 hearing, she must raise any such issue with the juvenile court in the first instance.  Subject to rare exceptions not applicable here, an appellate court cannot receive or consider postjudgment evidence that was never before the juvenile court.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 399.)  On this record, J.S. has failed to show an abuse of discretion in the order terminating parental rights.

## DISPOSITION

The juvenile court's orders denying J.S.'s section 388 petition and terminating parental rights over M.H. are affirmed.


VIRAMONTES, J.


WE CONCUR:



STRATTON, P. J.



GRIMES, J.